In the Matter of Travis Napoleon BEESON d/b/a Beeson's Glidden Paint Center, Bankrupt.

No. ED 69-B-28.

United States District Court,
W. D. Arkansas,
El Dorado Division.

Jan. 5, 1972.

Marvin Clark, El Dorado, Ark., D. D. Panich, Little Rock, Ark., for Bankrupt, Travis Napoleon Beeson.

Julian D. Streett, Camden, Ark., for trustee, Anthony G. Kassos.

Sam H. Park, Asst. U. S. Atty., Fort Smith, Ark., for the United States.

William I. Prewett, El Dorado, Ark., for other claimants.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

In this bankruptcy proceeding the bankrupt, Travis Napoleon Beeson, seeks a review of the order of Arnold M. Adams, Referee in Bankruptcy, entered January 20, 1971, in which the Referee denied the bankrupt a discharge under the provisions of the bankruptcy act.

The petition for review of the order of the Referee in Bankruptcy contends that the findings of fact by the Referee on three questions at issue are not sup-

ported by evidence and the record, and, therefore, are clearly erroneous.

The bankrupt, Travis Napoleon Beeson, filed voluntarily a bankruptcy petition on November 3, 1969. Mr. Anthony G. Kassos, an attorney, was initially appointed Receiver and subsequently Trustee in the matter. The court extended the time in which to file objections to discharge to September 1, 1970. Timely objections were filed by the United States Attorney, Western District of Arkansas, on behalf of the Small Business Administration, and by the Trustee in Bankruptcy. Five specifications were alleged by the objectors pursuant to § 14(c) of the Bankruptcy Act, 11 U.S.C.A. § 32.

Pursuant to pre-trial conference regularly scheduled on September 21, 1970, a hearing on the objections to discharge was scheduled for December 2, 1970. All parties were present and represented by counsel at the hearing,[1] which lasted three days. Some 58 witnesses testified, some of whom were called from time to time on various specifications.

At the conclusion of the testimony in chief on behalf of the objectors, the court dismissed two of the specifications on the ground that the initial burden of proving reasonable grounds for their existence had not been shown to the satisfaction of the court.[2] These two allegations of the objectors are not at issue.

The petition for review does not indicate any dispute as to the applicable law. All parties were in agreement and the Court concludes that § 14(c) of the

Bankruptcy Act, 11 U.S.C.A. § 32(c), is the applicable provision of the code. The review seeks a reversal on the findings of fact as determined by the Referee from testimony, ore tenus, numerous exhibits, briefs of counsel and record.

The first specification on which the bankrupt seeks reversal of the Referee's order is that the bankrupt failed to keep books of account or records from which his financial position and business transactions might be ascertained as to his business activity covering rental properties, real estate transactions, home construction and other personal investments. 11 U.S.C.A. § 32(c) (2).

From a review of the record and transcript, the testimony is in conflict and saturated with pointed inferences, innuendoes and either extreme carelessness or bad faith.

Two witnesses, Alvin Hardin, a Public Accountant, and J. Fred Jordan, a Certified Public Accountant, testified that they could not make a determination of the bankrupt's previous financial condition or previous business transactions from the records kept by the bankrupt. Mr. Hardin had been in the employ of the bankrupt as his public accountant for some ten years and attempted to keep his books for him. He testified that he frequently requested the bankrupt to improve his records in that he was keeping his books on documents furnished by Beeson without verification.

The only witness testifying otherwise was the bankrupt himself. He contend-

---

[1]. The United States Attorney, Bethel B. Larey, appeared by his assistant, Sam H. Park; the Trustee, Anthony G. Kassos, appeared in person and by Julian D. Streett, son and law partner of J. Bruce Streett, who had been appointed counsel for the Trustee, but who was ill and unable to attend; and the Bankrupt, Travis Napoleon Beeson, appeared in person and by Marvin Clark and D. D. Panich, his attorneys. Mr. Panich was retained some time after the first meeting of the creditors as additional counsel.

[2]. The first of these two specifications dismissed by the Referee was that the bank-

rupt had committed a false oath in that he failed to list certain savings certificates in his schedules which he had in his name and with joint ownership in his children or wife. There were four such certificates. The court concluded that it could not find that they were omitted for a fraudulent purpose. The second specification dismissed by the Referee alleged that the bankrupt had transferred some 30 pieces of real property within a relatively short time of bankruptcy, with a fraudulent intent to hinder and delay creditors.

ed that he could make a reconstruction from his records. He relied largely upon the fact that the Internal Revenue Agent examined his records and was able to make a return for the taxable years of 1968 and 1969. Both Mr. Hardin and Mr. Jordan testified that they were aware of the examination by the Internal Revenue Services, but even so, could not make a disclosure of the bankrupt's financial condition and business transactions. The Referee credited the testimony of Messrs. Hardin and Jordan.

Several witnesses offered testimony inferring that the Trustee and the Trustee's attorney misplaced, destroyed or concealed some of the business records of the bankrupt. The bankrupt testified that he believed that the misplaced or destroyed records would have given the accountants sufficient information on which they could reconstruct and determine the bankrupt's records of business transactions. The Trustee and his attorney testified that no records relating to the bankrupt's business was misplaced, discarded or destroyed. The Referee credited the testimony of the Trustee and his attorney, Julian D. Streett.

The Referee concluded as a fact that the business of the bankrupt was of the kind that required adequate books and records and that the records of the bankrupt were not sufficient from which his financial condition or business transactions could be recapitulated or determined for a reasonable period in the past. This Court is unable to say that the findings of the Referee on this specification or objection was clearly erroneous and sustains his conclusion.

The second specification which the bankrupt seeks to reverse the order of the Referee is that the bankrupt while engaged in business as a sole proprietor, obtained for such business money or property on credit or extension, or renewal of credit, by making or publishing, or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition. 11 U.S.C.A. § 32(c) (3). Substantial testimony was presented on behalf of both the objectors and the bankrupt on this specific objection Numerous witnesses testified and substantial records and exhibits were entered on the part of both parties. The Court deems it unnecessary to reconstruct the testimony and describe the enumerable documents entered on this issue.

It should be stated, however, that the bankrupt obtained for his business liquid assets, money, on credit in the sum of $50,000.00 from the Bank of Chidester, guaranteed to the extent of 90% by the Small Business Administration, an agency of the United States Government established by the Congress for such purpose. In order to obtain the loan and guaranty, the testimony discloses that the bankrupt executed a written loan application and financial statements reflecting his net worth as $95,791.09 on November 30, 1968, and, subsequently, an additional financial statement on December 31, 1968, his net worth was shown to be $179,160.25. The application stated that he had accounts payable of $16,000 and that there was no litigation pending against him or liens on his assets.

From the testimony, exhibits and record, the Referee concluded as a fact that the bankrupt actually had minimum debts of $348,000 on November 30, 1968, and $365,000 on December 31, 1968. Further the Referee concluded that he had no net worth and was insolvent. This conclusion of the Referee was based, inter alia, on the record from the Circuit Clerk and Recorder of Ouachita County, Arkansas, which listed pending litigation against the bankrupt on the above debts, together with a separate list of lien creditors who had obtained judgments. The Internal Revenue Service had a claim for a substantial sum for withholding taxes.

Representatives of the Small Business Administration testified that they relied on the loan application and financial

statements attached thereto, executed by the bankrupt, in approving the loan application for $50,000 obtained by the bankrupt through the Bank of Chidester, Arkansas.

At the conclusion of the testimony on behalf of the objectors on this specification, the court ruled that they had shown reasonable grounds for believing that the bankrupt had committed this specification and that it was upon the bankrupt to prove that he had not committed the act.

The bankrupt attempted to show that the representatives of the Small Business Administration did not rely upon the loan application and financial statements and other exhibits attached thereto, but made their own independent investigation. The bankrupt insisted that he failed to list his accounts payable, litigation or judgments against him in his construction business because the Regional Director of the Small Business Administration had advised him not to include these in the loan application because the agency could not loan or guarantee a loan on such a speculative business. The Regional Director, C. W. Ferguson, testified and emphatically denied any such conversation or instruction to the bankrupt. The Referee credited the testimony of the representatives of SBA, Snow and Thayer and found as a fact that they relied upon the materially false written application and exhibits in approving the guaranty. The Referee further concluded that neither Snow or Thayer would have recommended or approved the guaranty had the loan application and exhibits disclosed the actual accounts payable. The Referee also credited the testimony of the Regional Director, Mr. C. W. Ferguson, and discredited the testimony of the bankrupt.

■ From the testimony and exhibits, the Referee concluded as a fact that the written loan application and exhibits were materially false and relied upon by SBA; and that said financial statements were knowingly and intentionally untrue and executed by Beeson with in-

tention to defraud SBA, which agency was called upon and paid the Bank of Chidester the sum of $40,456.10. This Court cannot arrive at the conclusion that the findings of the Referee in connection with this objection was clearly erroneous.

The final specification entered by the objectors on which the bankrupt seeks a reversal of the Referee's order is that the bankrupt failed to satisfactorily explain any loss or deficiencies of assets to meet his liabilities. 11 U.S.C.A. § 32(c) (7). The record discloses that the bankrupt had a substantial reversal in his financial position from December 31, 1968, to the filing of the bankruptcy schedules on November 3, 1969. The financial statement filed by the bankrupt November 28, 1968, included personal assets of $138,169.33, against which there were liabilities of $42,378.24, or a net worth of $95,791.09. The bankrupt filed a financial statement dated December 31, 1968, which included assets of $345,350.25, less liabilities of $166,-090.00 or a net worth of $179,160.-25. After December 31, 1968, the bankrupt had construction jobs which were completed under contracts from which he was to receive some $178,000. He disposed of rental properties and obtained the disbursement from the $50,000 loan from the Bank of Chidester. The objectors insisted that the bankrupt's net worth should have improved, whereas, his financial position reversed itself to zero net worth in approximately eleven months. In addition, he owed the Internal Revenue Service $46,743.96 and according to the bankrupt's schedules he owed general creditors $93,833.73.

At the conclusion of the testimony on behalf of the objectors, the Referee concluded that the testimony showed reasonable ground that the bankrupt had committed this specification and that the burden was upon him to prove he had not committed the act.

■ The thrust of the bankrupt's explanation was that he suffered financial

reversal due to a depressed market as it related to the sale of rental property; the spiraling cost of new construction; and his labor costs remained high during this period which consumed the profits and depleted his net worth. From a review of the transcript on this objection, it is clear that the testimony is quite indecisive. The Referee concluded that when the case is viewed as a whole the bankrupt had no net worth in November or December, 1968, but was insolvent. The Referee concluded as a fact that the bankrupt failed to prove or explain to the satisfaction of the court the sudden reversal of his financial condition from December 31, 1968, to December 3, 1969. On considering the testimony as a whole and the composite record, this Court is unable to conclude that the findings of the Referee in connection with this objection was clearly erroneous.

■ Rule 52(a) of the Federal Rules of Civil Procedure provide that "In all actions tried upon the facts * * * the court shall find the facts specially and state separately its conclusions of law thereon, [etc.] * * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." These provisions of the rule apply to bankruptcy proceedings. Gross v. Fidelity & Deposit Company of Maryland, 8 Cir. 1962, 302 F.2d 338, 339; United States Machinery Movers v. Beller, 8 Cir., 280 F.2d 91, 94, cert. den. 364 U.S. 903, 81 S.Ct. 236, 5 L.Ed.2d 195; O'Rieley v. Endicott-Johnson Corporation, 8 Cir., 297 F.2d 1, 4.

In Gross v. Fidelity & Deposit Company of Maryland, supra, it is stated on behalf of the Eighth Circuit Court by our learned Chief Judge, M. C. Matthes, that:

"In this jurisdiction it is firmly settled that where, as here, the issue stems from a general reference, the 'clearly erroneous' standard is to be applied to findings of the referee and not to the findings of the district court. O'Rieley v. Endicott-Johnson Corporation [8 Cir., 297 F.2d 1] supra." [3]

A determination as to whether the findings of the Referee on objections are clearly erroneous must be made in light of the pronouncement of the Supreme Court of the United States that "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; Gross v. Fidelity, supra.

■ It is also well to observe that the statutory provisions regulating discharges are remedial in nature and should be construed liberally with the purpose of carrying into effect the legislative intent, and that the statutory grounds for opposing a discharge should not be extended by construction. Collier on Bankruptcy, 14th Ed., Vol. 1, § 14.02[3], p. 1256. A bankrupt is entitled to a discharge unless the evidence clearly shows that he has committed an act which bars it. Farmers' Sav. Bank of Grimes, Iowa v. Allen, 8 Cir., 41 F.2d 208, 212. In Dilworth v. Boothe, 5 Cir., 69 F.2d 621, 624, the court observed: "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural."

---

3. General Order No. 47, Title 11 U.S.C.A. following § 53, provides: "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

In Johnson v. Bockman, 10 Cir., 282 F.2d 544, 545, the court stated:

"It is settled law that the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., is to be liberally construed in favor of a bankrupt. A bankrupt is entitled to a discharge unless it clearly appears that he has committed some act which precludes his right thereto. And the initial burden rests upon the one objecting to establish reasonable basis for believing that the bankrupt has committed an act or acts which prevent his discharge. But when a prima facie case has been made by the one objecting to the granting of the discharge, the burden shifts to the bankrupt to clear himself of the charge established by such prima facie case. Jones v. Gertz, 10 Cir., 121 F.2d 782; Dixon v. Lowe, 10 Cir., 177 F.2d 807; McMullin v. Todd, 10 Cir., 228 F.2d 139." Gross v. Fidelity, supra, 302 F.2d at p. 340.

In light of the foregoing principles, the Court is constrained to hold from a careful examination and consideration of the record that the findings of the Referee were not clearly erroneous, but to the contrary is supported by substantial evidence. In numerous incidents the transcript discloses that the findings of the Referee are supported by undisputed testimony.

It is immaterial how this Court would have decided the case from the same voluminous records, exhibits and testimony. As already stated, the question is whether there is substantial evidence to support the findings of the Referee. The able and experienced Referee has no doubt given the matter his most careful attention and consideration. This Court is satisfied and concludes that the Referee's findings and conclusions were decided on the basis of substantial testimony presented to him during the course of the hearings at which time he had an opportunity to observe the witnesses, review the exhibits and consider the contentions of the respective parties.

In Fort Smith Acoustical Company (W.D.Ark.1970), 310 F.Supp. 226, aptly stated:

"Everyone forms his conclusions from testimony, not only from the words which he hears the witnesses utter but from their appearance when they utter them;" * * *.

The findings of the Referee as included in his order will be sustained and the petition for review will be dismissed.

An order will be entered in accordance with this opinion.